**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**UNITED STATES OF AMERICA**

**v.**

**BRADEN HUSTON HOBBS**

**CASE NO. 3:25-cr-73-HES-SJH**

_____/

### DEFENDANT'S SENTENCING MEMORANDUM

**COMES NOW**, the Defendant, **BRADEN HUSTON HOBBS** ("Defendant" or "Mr. Hobbs"), by and through his undersigned counsel, and hereby submits his Sentencing Memorandum for this Honorable Court's consideration in support of a below guideline sentence while recognizing that Mr. Hobbs is subject to a 60 month mandatory minimum sentence, as required by the minimum mandatories that apply under the Federal Sentencing Guidelines.

### INTRODUCTION

Mr. Hobbs will appear before this Honorable Court on June 24, 2026, to be sentenced on one count of Firearms Trafficking Conspiracy, in violation of 18 U.S.C. § 933(a)(3); one count of Making a Materially False Statement to a Firearms Dealer, in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2); and one count of Conspiracy to Distribute and Possess with Intent to Distribute 500 Grams or More of a Mixture and Substance Containing a Detectable Amount of Cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii) and 846. The minimum term of imprisonment is five (5) years/60 months; and the maximum term of imprisonment is sixty-five (65) years, and fine of $5,500,000.00 dollars.

1

On September 16, 2025, pursuant to a Plea Agreement with the United States Attorney's Office, Mr. Hobbs plead guilty to Counts One, Four, and Five of the Indictment, with the understanding that he would receive a prison sentence between five (5) and sixty-five (65) years. ***See Plea Agreement***, between the United States of America and Mr. Hobbs (September 16, 2025), ***located at docket line 40***. In this case, Defendant's guideline sentence is one-hundred-thirty-five (135) months (11.25 years) to one-hundred-sixty-eight (168) months (13.75 years). *See,* Joshua Blakely, ***Pre-Sentence Investigation Report***, U.S. Probation Office, Feb. 25, 2026, at 17, which is ***located at docket line 48***.

It is important to note that Mr. Hobbs has accepted full responsibility, has met with and provided substantial assistance to the Government, has limited criminal history, has not been alleged to have committed an act of violence, and is 28 years old at the time of sentencing. Therefore, based upon the reasoning set forth herein, Defendant respectfully requests this Honorable Court impose a below guideline sentence of not less than 60 months/five-year imprisonment sentence, followed by a period of supervised release and all applicable restitution, fines, and costs.

***Federal Sentencing Overview***.  A sentencing court must consider both the federal sentencing guidelines and the statutory factors under section 3553(a).  *See United States v. Hunt*, 459 F. 3d 1180, 1185 (11th Cir. 2006) (holding "that a district court may determine, on a case-by-case basis, the weight to give the [sentencing] Guidelines, so long as that determination is made with reference to the remaining section 3553(a) factors that the court must also consider in calculating the defendant's sentence.").  If a court imposes a sentence properly calculated under the United States Sentencing Guidelines range, this sentence is

2

clothed in a "presumption of reasonableness" under appellate review. *Rita v. U.S.*, 551 U.S. 338, 341 (2007).

This "nonbinding appellate presumption that a Guidelines sentence is reasonable does not require the sentencing judge impose that sentence." *Id*. at 353. *See Kimbrough v. U.S.*, 552 U.S. 85, 91 (2007) (holding that under *Booker*, "the cocaine Guidelines, like all other Guidelines, are advisory only, and the [lower court] erred in holding the crack/powder disparity effectively mandatory. A district judge must include the Guidelines range in the array of factors warranting consideration. The judge may determine, however, that, in the particular case, a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing. 18 U.S.C.A. § 3553(a)."). *See also*, *United States v. Dorvee*, 616 F.3d 174, 184 (2nd Cir. 2010) (noting the "Commission did not use an empirical approach in formulating the guidelines for child pornography," similar to the crack cocaine guidelines at issue in *Kimbrough*).

### III.   STATUTORY FACTORS: APPLICATION OF 18 U.S.C.A. § 3553 FACTORS

- **18 U.S.C.A. § 3553(1) Nature and circumstances of the offense and the history and characteristics of the defendant:**

In June 2024, agents with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") began investigating Mr. Hobbs after reviewing reports from the St. Johns County Sheriff's Office related to unrelated criminal investigations involving drugs and firearms. ATF agents determined that a firearm recovered during an unrelated investigation had previously been purchased by Mr. Hobbs approximately forty-two days earlier. Further review of records revealed that Mr. Hobbs had purchased numerous firearms that were later recovered during separate law enforcement investigations. Investigators also learned that

several firearms purchased by Mr. Hobbs had been recovered during the execution of a search warrant at a residence allegedly used for drug trafficking activity.

The investigation later expanded after the Florida Department of Law Enforcement ("FDLE") identified co-conspirator Alton Wayne Cope III as a potential firearms dealer. Through the use of confidential informants and undercover operations, agents conducted a series of controlled firearm purchases involving Cope III and another individual, Jordan Lance Cope. During these operations, law enforcement purchased at least eleven firearms, several of which had previously been reported stolen. Investigators concluded that at least five of those firearms had originally been purchased by Mr. Hobbs and later sold to the Copes, who then resold them to undercover agents. ATF agents noted that the time between Mr. Hobbs' purchase of certain firearms and their recovery by law enforcement was relatively short, in some cases as little as forty-one to forty-two days. It should be noted that the stolen firearms recovered by authorities were not related to Mr. Hobbs.

According to the report, investigators concluded that Mr. Hobbs routinely bought and sold firearms for profit without possessing a federal firearms license. ATF agents additionally obtained a federal search warrant for Mr. Hobbs' iCloud account. According to the report, agents reviewed messages, photographs, and videos that they believed reflected drug use, firearms transactions, and communications about trading firearms for drugs, including cocaine and Adderall. This fact is strong evidence of Mr. Hobbs' addiction issues. It should be noted that Mr. Hobbs never modified any firearm to remove serial numbers or to convert a firearm to an automatic or machine gun. Nor did he possess or sale any components that could be used to modify or alter any firearm.

4

On June 26, 2024, officers with the Jacksonville Sheriff's Office responded to assist Jacksonville Fire and Rescue regarding a possible impaired driver. According to the report, officers found Mr. Hobbs unconscious behind the wheel of his vehicle in the middle of the roadway. Officers observed numerous signs of impairment. Although Mr. Hobbs did not participate in field sobriety exercises, he consented to urinalysis. Subsequent testing by an FDLE analyst indicated the presence of multiple controlled substances in his system, including amphetamine/methamphetamine, cocaine, THC, alprazolam, diazepam, oxazepam, temazepam, and other related substances. This traffic stop and arrest constituted the height of Mr. Hobbs' addiction as he was on a host of substances.

During a search of the vehicle, officers reportedly discovered quantities of suspected narcotics and drug-related paraphernalia. Investigators recovered multiple bags containing suspected cocaine, a quantity of suspected Adderall, vacuum-seal bags, a digital scale, and gloves. Law enforcement also recovered a substantial amount of ammunition from the vehicle. According to the report, FDLE testing later confirmed the presence of cocaine weighing more than 220 grams. It should be noted that this is the only occasion in which Mr. Hobbs was found in possession of cocaine or other drugs and he would submit that this occasion represented the most he ever possessed and it was by happenstance that he was arrested that same day.

Based on witness statements and communications recovered from the iCloud account, agents alleged that Mr. Hobbs possessed at least 500 grams of cocaine during the conspiracy. Though the aggregate amount is sufficient to establish the charge in which he

has pleaded, it should be noted that Mr. Hobbs was not known to be a high-level narcotics dealer but more in line with selling to support his own habits.

Based on the information gleamed from the investigation, on March 26, 2025, a grand jury initially returned a six-count Indictment against Mr. Hobbs. ***See Docket line 1.***

On September 16, 2025, Mr. Hobbs accepted responsibility and entered a plea of guilty to Counts One, Four and Five pursuant to a pre-negotiated Plea Agreement. ***See Docket line 40***. Under the provisions of this Plea Agreement, this Court may sentence Mr. Hobbs to prison for a minimum term of five (5) years and a maximum term of sixty-five (65) years. Further, the plea agreement acknowledges that Mr. Hobbs would agree to cooperate with the United States which he has done.

While the offenses in this case are unquestionably serious, the Court must evaluate the specific facts and circumstances surrounding Mr. Hobbs' conduct rather than relying solely upon the advisory guideline range. *See, Gall v. United States*, 552 U.S. 38, 50 (2007) (recognizing that sentencing courts must make "an individualized assessment based on the facts presented"); *Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (holding district courts may conclude that a guideline sentence is "greater than necessary" to accomplish the goals of sentencing).

Importantly, this is not a case involving violence, threats, physical injury, discharge of firearms, armed robbery, cartel trafficking, or allegations that Mr. Hobbs personally used firearms to commit crimes of violence. Nor is this a case involving international trafficking, organized gang activity, large-scale narcotics distribution networks, or modifying or converting any firearms to automatic capacity or altering or removing serial numbers. Mr.

Hobbs has accepted responsibility for unlawfully trafficking firearms and participating in cocaine distribution, but the record also reflects that his conduct was fueled by longstanding addiction issues, untreated trauma, and severe substance abuse that escalated after the suicide of his best friend shortly before his arrest.

Federal courts have repeatedly recognized that sentencing under § 3553(a) requires consideration of the defendant as a whole person, including addiction, mental health, trauma history, and the likelihood of rehabilitation. *See, Pepper v. United States*, 562 U.S. 476, 487-93 (2011) (holding that sentencing courts possess broad discretion to consider "the fullest information possible concerning the defendant's life and characteristics"); *United States v. Booker*, 543 U.S. 220, 246 (2005) (rendering the Guidelines advisory and restoring discretion to impose individualized sentences); and *Gall v. United States*, 552 U.S. 38, 59 (2007) (affirming substantial variance based in part on defendant's post-offense rehabilitation and personal history).

Although the advisory guideline range in this case is 135 to 168 months, appellate courts have consistently upheld substantial downward variances where district courts reasonably determined that a guideline sentence was greater than necessary under §3553(a). *See*, *United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008) (district courts may attach greater weight to some § 3553(a) factors than others); and *United States v. Clay*, 483 F.3d 739, 744-46 (11th Cir. 2007) (affirming downward variance where district court concluded guideline sentence exceeded what was necessary).

**Mr. Hobbs respectfully submits that a sentence of 60 months appropriately reflects the seriousness of the offense conduct while also accounting for the highly**

**mitigating circumstances present in this case: severe childhood trauma, substance abuse beginning in adolescence, untreated mental-health struggles, repeated head injuries and seizures, genuine acceptance of responsibility, substantial rehabilitative efforts while incarcerated, the absence of any meaningful prior criminal history, and the substantial assistance provided to the government.**

**History and Characteristics of the Defendant***:* Mr. Hobbs' background is marked by significant childhood trauma, substance abuse normalization within the family home, exposure to alcoholism and violence, untreated mental-health issues, and repeated traumatic experiences extending into adulthood. From an early age, Mr. Hobbs was exposed to domestic violence, alcohol abuse, and physical assaults committed by his father against both family members and Mr. Hobbs himself. The record also demonstrates that drug use became normalized during his adolescence through exposure to his older brother's severe addiction issues.

Federal courts have consistently recognized that traumatic childhood experiences, addiction, and mental-health struggles are appropriate mitigating considerations at sentencing. *See*, *Porter v. McCollum*, 558 U.S. 30, 41 (2009) (recognizing that childhood abuse and trauma are highly relevant mitigating considerations); *Pepper v. United States*, 562 U.S. 476, 492 (2011) (post-offense rehabilitation and personal history remain central sentencing considerations); and *Gall v. United States*, 552 U.S. 38, 53-59 (2007) (affirming downward variance based on defendant's personal history, immaturity, and rehabilitation).

Importantly, despite these struggles, Mr. Hobbs maintained employment throughout most of his adult life, earned his real estate license, worked multiple legitimate

8

jobs, and remained capable of functioning as a productive member of society when sober. Unlike many defendants appearing before this Court on comparable charges, Mr. Hobbs entered federal sentencing with virtually no meaningful criminal history, placing him in Criminal History Category I.

Mr. Hobbs has demonstrated genuine rehabilitative efforts since his arrest. While out on pre-trial release when only charged in state court, he entered intensive treatment and gained meaningful employment. Since incarcerated, he has remained sober, completed numerous educational and rehabilitative courses while incarcerated, maintained a clean disciplinary record in the Bradford County Jail, participated in religious services and prayer groups, and assisted Spanish-speaking inmates by translating documents and communicating with jail staff. Courts routinely recognize that post-offense rehabilitation is a powerful indicator that a defendant presents a reduced risk of recidivism. *See*, *Pepper v. United States*, 562 U.S. 476, 491 (2011) ("evidence of post-sentencing rehabilitation may plainly be relevant to several of the § 3553(a) factors").

**Childhood and Family Information.**  Braden Hobbs was born on December 8, 1997, in Jacksonville Beach, Florida, and grew up in Ponte Vedra Beach, Florida. He is currently 28 years old. He is the youngest son of Kelly and Troy Hobbs. Mr. Hobbs has two older brothers, Conner and Garrett, who are thirty-two (32) and thirty-four (34) years old respectively.

**Fetal Alcohol Exposure.** Before Mr. Hobbs was even born, the decisions of his parents, Troy and Kelly, were already negatively impacting his development. According to Troy, before their children were born, he and Kelly drank alcohol and used cocaine every

9

weekend. Kelly stated that her pregnancy with Mr. Hobbs was unplanned, and that she did not learn she was pregnant until she was approximately sixteen (16) weeks. Kelly admitted that during those sixteen (16) weeks, she likely consumed alcohol on numerous occasions. The scientific community has long recognized the harmful effects that alcohol exposure during pregnancy can have on a child's cognitive and neurological developments. *See*, National Institute on Alcohol Abuse & Alcoholism – Understanding Fetal Alcohol Spectrum Disorders, attached hereto as **Exhibit A**

Mr. Hobbs was formally evaluated by Dr. George Deitchman while in custody to explore the Defendant's history of childhood trauma, substance abuse, and undiagnosed mental health issues. It should be noted that competency has not been an issue in this case nor does the undersigned have any reason to question the same. ***See* Hobbs's evaluation by Dr. Deitchman report submitted under seal.**

**Father's Alcoholism.** Mr. Hobbs described his father, Troy, as a "closet alcoholic." Both Mr. Hobbs and his mother recalled discovering dozens of bottles of Crown Royal inside the family home, which Mr. Hobbs' father had hidden inside a cabinet and behind a row of books. Additionally, Mr. Hobbs recalls multiple occasions throughout his childhood where his father drove drunk while Mr. Hobbs and his brothers were in the car. Mr. Hobbs vividly remembers seeing a glass of Crown Royal in the cupholder of the vehicle nearly every time his father drove.

Troy acknowledged his longstanding struggles with alcohol abuse and believes Mr. Hobbs may have been genetically predisposed to alcoholism due to the extensive history of substance abuse on Troy's side of the family. In addition to Troy's alcoholism, Mr.

10

Hobbs' paternal grandmother also suffered from alcoholism, and his paternal uncle ultimately died because of the disease.

**Witness to Father's Physical Abuse of Brother.** Mr. Hobbs described his father, Troy, as someone who experienced severe "bipolar-like mood swings," particularly when he was intoxicated. His mother, Kelly, recalled that during these episodes, "the whole house would shift," and Mr. Hobbs' older brother, Garrett, would become "the sacrificial lamb of the family." Kelly explained that Troy himself had been physically abused by his stepfather as a child and ultimately repeated that cycle of violence with Garrett.

Mr. Hobbs described his relationship with his Troy as "tumultuous," due in large part to witnessing the repeated physical abuse inflicted upon Garrett. According to Mr. Hobbs, Troy would physically assault Garrett multiple times each week and that such abuse usually occurred in front of Mr. Hobbs and the rest of the family. Mr. Hobbs specifically recalled seeing Troy hit Garrett, shove him into walls, throw him to the ground, and chase him throughout the house. Garrett frequently had bruises covering his body because of the abuse. Witnessing this violence throughout his childhood deeply affected Mr. Hobbs. He described feeling "helpless" and stated that growing up in such an environment "destroyed" his sense of safety and trust in the world.

**Alcohol & Drug Use.** After suffering years of abuse at the hands of their father, Mr. Hobbs' oldest brother Garrett spiraled into drug use and gun violence. At the age of fourteen (14), Garrett began using LSD, mushrooms, marijuana, and prescription pills to help him cope with all the trauma caused by his father. Garrett would regularly get high

11

with his friends in front of Mr. Hobbs, which "normalized" drug use for Mr. Hobbs at a young age.

Unfortunately, Garrett's drug problem did not stop after his release from prison. Shortly after Garrett's release, when Mr. Hobbs was approximately thirteen (13) years old, Mr. Hobbs saw Garrett snort a line of cocaine for the first time. It was around this time that Mr. Hobbs started regularly using hard drugs with Garrett. By the age of fifteen (15), Mr. Hobbs was using drugs with Garrett every week, most often cocaine, LSD, mushrooms, marijuana, Xanax, and Adderall.

**Parents' Divorce.** In 2011, when Mr. Hobbs was approximately thirteen (13) years old, his parents Troy and Kelly divorced after Troy had an affair with Polly, a family friend who was also married. After the divorce, Troy continued dating Polly for about twelve (12) years before ending the relationship in 2024. The divorce of his parents was extremely difficult for Mr. Hobbs. Troy stated that after he told Mr. Hobbs he was getting divorced from his mother, Mr. Hobbs "shriveled up, became very emotional, and all the light came out of him." After the divorce, Kelly struggled to support herself and her children financially. For instance, Kelly often rode her bike to work in an attempt to save money and make ends meet. Despite efforts to shield her children from the financial stress she was under, Mr. Hobbs was painfully aware of the financial issues they faced and recalled, "There were many days where my mom and I survived off of Ramen noodles."

**Anxiety Disorder**. Being violently choked by his father prompted Mr. Hobbs to seek professional help with his anxiety and mental health struggles. At the age of twenty-two (22), Mr. Hobbs met with a therapist for the first time in his life and attended a few

12

talk therapy sessions. At this same time, Mr. Hobbs was diagnosed with an anxiety disorder and prescribed Xanax, a medication he was already addicted to.

**Untreated Head Injuries from Seizures and car accident.** In 2019, when Mr. Hobbs was approximately twenty-one (21) years old, he started suffering grand mal seizures. During one of his first grand mal seizures, Mr. Hobbs fell and hit his head on the tiled floor in his mother's house, knocking him unconscious. Mr. Hobbs' mother called paramedics who treated him for concussion symptoms, but Mr. Hobbs declined to go to the hospital for further treatment. In 2021, when Mr. Hobbs was approximately twenty-three (23) years old, he fractured several vertebrae in his neck after getting into a head-on collision with another vehicle. Mr. Hobbs attended physical therapy for three months to regain mobility in his neck. In 2022, when Mr. Hobbs was approximately twenty-four (24) years old, he suffered another grand mal seizure while driving. Mr. Hobbs ended up crashing into a ditch and was knocked unconscious. The first responders had to break the windows of his car and drag him out. Mr. Hobbs' memory of this accident is foggy, but he believes he again declined to be taken to the hospital after this accident. In 2023, when Mr. Hobbs was approximately twenty-five (25) years old, he flipped his car after overcorrecting. In addition to rolling several times, his car also hit several trees and a telephone pole before landing in a ditch. Mr. Hobbs had blood coming out of the back of his head and a badly sprained ankle. However, he once again refused to go to the hospital for treatment because of his drug addiction. Mr. Hobbs' most recent seizure occurred in 2023. In total, he has suffered around seven grand mal seizures. Because these seizures occurred at a time when Mr. Hobbs was heavily abusing drugs, he refused to ever go to a

13

hospital and therefore has never been formally diagnosed with or treated for a seizure disorder or head injuries.

**Education, Extracurriculars, & Employment.** Mr. Hobbs graduated from Ponte Vedra High School in 2016. He played football, basketball, tennis, and golf, and he was also a member of the Boy Scouts of America. His family regularly attended services at their Lutheran Church. Mr. Hobbs was confirmed as Lutheran and was active in his church's youth group. As a teenager, Mr. Hobbs would often volunteer with his family to feed homeless people in Jacksonville Beach and St. Augustine. Mr. Hobbs also worked at several different local restaurants while in high school. After high school, Mr. Hobbs attended Northwest Florida State College. However, he left his program after a year because he struggled being away from his family. After moving back home, Mr. Hobbs worked towards earning his real estate license. During this time, Mr. Hobbs supported himself by working as a veterinary technician for a veterinary clinic and also as caregiver for a professional pet sitting business. *See* character letter from Dr. Mack.

In January 2020, Mr. Hobbs earned his real estate license. Until the time of his arrest on State charges, Mr. Hobbs worked as an independent real estate agent with Florida Homes Realty and Mortgage. His license expired in September 2025 during his current incarceration.  Because the real estate market was slow in 2024, Mr. Hobbs took on other part-time jobs. Starting in July 2024, Mr. Hobbs worked for a few months at Daily's Gas Station and Convenience Store in Nocatee, Florida. Following Mr. Hobbs' release on bond from his State case, Mr. Hobbs left the Daily's job in October 2024 after accepting a job as a heavy machinery salesman for McLaren Industries, where he was working up until the

14

time of his federal arrest. It should be noted that Mr. Hobbs was unaware of the pending Indictment and abandoned the criminal behavior, for which he is to be sentenced, and began working a traditional job while attending therapy to address his substance abuse issues.

**Best Friend's Suicide Prior to Arrest.** Just four months before Mr. Hobbs' arrest, his best friend Cameron committed suicide. Mr. Hobbs and Cameron talked on the phone every day, including just hours before Cameron committed suicide. Mr. Hobbs is haunted by the fact that he was one of the last people to speak with Cameron and that he did not pick up on any red flags during the call. Mr. Hobbs always wonders if he could have said or done something more to prevent his friend's suicide.

Mr. Hobbs described being "really torn up" by Cameron's death. In the weeks after Cameron's passing, Mr. Hobbs would cry in the shower every day. Mr. Hobbs' family noticed a "giant shift" in Mr. Hobbs' behavior at this time. According to his mother Kelly, after Cameron's death, Mr. Hobbs "went downhill really fast."

Mr. Hobbs remarked that the suicidal death of his closest friend was "absolutely a factor" in his current arrest. After Cameron's passing, Mr. Hobbs admitted, "I started abusing drugs severely. I increased the dose of everything I was taking to try to help numb the pain."

**Abuse in Duval County Jail.** During the twelve (12) days that Mr. Hobbs was incarcerated in the Duval County Jail, on charges he is set to be sentenced in this case, he suffered several injuries. While experiencing hallucinations from drug withdrawals, Mr. Hobbs thought an officer was seeking to harm him and tried punching in self-defense.

According to Mr. Hobbs, rather than transport him to either the mental health wing or medical due to the sever withdraws, three guards violently beat and tased him. After being released from the jail, Mr. Hobbs' hair was caked in blood, he had bruises and scabs all over his head, his back was covered in taser burn marks, he had cut marks on his shoulders, his hip was heavily bruised, he had an infected wound on his butt, his pinky finger was broken, and he lost twenty-two (22) pounds.

- **18 U.S.C.A. § 3553(2)** THE NEED FOR THE SENTENCE IMPOSED

*(A) to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner*

- **18 U.S.C.A.§ 3553(2)(A): to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense;**

Pursuant to the pre-negotiated Plea Agreement, Mr. Hobbs will be sentenced on one count of Firearms Trafficking Conspiracy, in violation of 18 U.S.C. § 933(a)(3); one count of Making a Materially False Statement to a Firearms Dealer, in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2); and one count of Conspiracy to Distribute and Possess with Intent to Distribute 500 Grams or More of a Mixture and Substance Containing a Detectable Amount of Cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii) and 846.

There can be no dispute that trafficking firearms and distributing controlled substances are serious federal offenses. Mr. Hobbs does not minimize the seriousness of his conduct and has accepted full responsibility by pleading guilty rather than forcing the Government to proceed to trial. In addition, Mr. Hobbs met with the Government on

16

multiple occasions to provide substantial assistance and to answer any questions presented to him. His goal with to aid in recovering as many firearms as possible.

§ 3553(a) requires this Court to impose a sentence that is "sufficient, but not greater than necessary" to achieve the purposes of sentencing. 18 U.S.C. § 3553(a). The Supreme Court has repeatedly emphasized that sentencing is not a mechanical process driven solely by guideline calculations, but rather an individualized assessment requiring consideration of all mitigating and aggravating circumstances. *See*, *Gall v. United States*, 552 U.S. 38, 50 (2007); and *Kimbrough v. United States*, 552 U.S. 85, 101 (2007).

In the case at bar, a 60-month sentence constitutes an extremely serious punishment for a first-time federal offender with Criminal History Category I. Such a sentence would result in Mr. Hobbs spending significant amount of time in federal custody even after accounting for good-time credit. It would permanently strip him of numerous civil rights and professional opportunities, terminate his real-estate career, impose lifelong collateral consequences associated with felony convictions, and separate him from his family during the prime years of his life.

Additionally, the advisory guideline range in this case is driven largely by enhancements relating to firearm quantity and other specific offense characteristics under U.S.S.G. § 2K2.1. Courts have recognized that guideline enhancements can, in some cases, produce ranges greater than necessary to satisfy § 3553(a). *See*, *Kimbrough v. United States*, 552 U.S. 85, 109-10 (2007) (district courts may vary where guidelines fail to properly account for individualized sentencing considerations); and *Spears v. United*

17

*States*, 555 U.S. 261, 264 (2009) (district courts may disagree with guideline policy judgments).

Most importantly, Mr. Hobbs has demonstrated genuine remorse and meaningful rehabilitative efforts while incarcerated. The record reflects that he has accepted responsibility, maintained sobriety, pursued educational programming, strengthened his faith, and committed himself to treatment and lawful living. Under these circumstances, a sentence of sixty (60) months is sufficient to reflect the seriousness of the offense, promote respect for the law, and provide just punishment.

- **18 U.S.C.A. § 3553(2)(B): to afford adequate deterrence to criminal conduct**;

The collateral consequences Mr. Hobbs will face as a convicted felon serve as a substantial deterrent for future criminal conduct. In *United States v. Nesbeth*, 188 F.Supp.3d 179, 180 (E.D.N.Y. 2016), Senior District Court Judge Block, urged the legal community to consider the "collateral consequences" of a felony conviction, many of which . . . "serve no useful function other than to punish defendants after they have completed their court-imposed sentences." Citing related research and over two decades of judicial experience, Judge Block notes these "collateral consequences" "amount to a form of 'civil death' and send the unequivocal message that 'they' are no longer part of 'us.'" *Id.* These "collateral consequences" include, but are not limited to, denial of certain government benefits, denial of public housing, loss of eligibility for certain forms of financial aid, grants, loans, and, of course, the well-known loss of one's right to vote, or to sit on a jury. *Id*. at 185. Further, even after a sentence is completed, a convicted felon may be precluded from obtaining certain professional licenses and will likely find it incredibly

18

difficult to gain employment because many employers refuse to hire ex-convicts and convicted felons. *Id.*

The *Nesbeth* defendant had been convicted of a drug trafficking charge and was facing 33 to 41 months in prison. *Id.* Instead of imposing a prison sentence, however, Judge Block ordered Ms. Nesbeth to complete one year of probation, with six months of home confinement, and 100 hours of community service. Judge Block explained this sentence by noting the above-mentioned consequences of being a convicted felon and determined that defendant Nesbeth would be "sufficiently punished" and "is likely to suffer – principally [because of] her likely inability to pursue a teaching career and her goal of becoming a principal." *Id.* at 194. In short, "jail [was] not necessary to render a punishment that is sufficient but not greater than necessary to meet the ends of sentencing." *Id.* at 194. Mr. Hobbs urges this Honorable Court to adopt the reasoning in *Nesbeth* and consider the collateral consequences the Defendant will face as a convicted felon.

Moreover, because has no significant criminal history, a sixty (60) month period of incarceration, followed by any period of house arrest, supervised release, community service, continued treatment, and permanent felony conviction is sufficient to deter Mr. Hobbs from reoffending. As evidenced by his pre-indictment behavior and how he has conducted himself while incarcerated, this Honorable Court can have comfort in knowing Mr. Hobbs has displayed a change in behavior consistent with a low risk of recidivism.

- **18 U.S.C.A. § 3553(2)(C): to protect the public from further crimes of the defendant;**

As Mr. Hobbs is now a convicted felon, he will no longer be able to lawfully purchase or possess firearms, which is the criminal conduct that led to this case. In addition,

19

even while out on pre-trial release, he entered substance abuse treatment and gained meaningful employment. This is strong evidence of the character of Mr. Hobbs as unbeknownst to him, a pending indictment was forthcoming, and yet he was on a path to a drug-free lifestyle and maintaining employment. He was on the road to once again becoming a productive member of society. Mr. Hobbs will remain incarcerated for a number of years, be subject to a term of supervised release, and will have limitations on his access to firearms which are the primary focus of this case. As Mr. Hobbs criminal conduct was heavily influenced by his addiction, his sobriety and continued treatment will further reduce the risk of recidivism.

- **18 U.S.C.A. § 3553(2)(D): to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner*;***

In this case, 18 U.S.C.A. §§ 3553(2)(C) and 3553(2)(D) can be considered in conjunction. Protecting the public from "future crimes" of Mr. Hobbs can be accomplished by continuing his treatment through psychological counseling, participation in RDAP and other recidivism reduction courses while incarcerated, and through supervised release. To the extent this Court has specific concerns regarding Defendant's release, the Court has the discretion to impose any special conditions that it deems necessary.

- **18 U.S.C.A. §3553(3): THE KINDS OF SENTENCES AVAILABLE**

This Honorable Court has discretion to impose a term of imprisonment, a term of supervised release, probation under the Statutory Provisions, as well as a fine. Each kind of sentence available is addressed below, under 18 U.S.C.A. §3553(4).

- **18 U.S.C.A. §3553(4): THE KINDS OF SENTENCE AND SENTENCING RANGE ESTABLISHED FOR – (A) the applicable category of offense committed by the**

> **applicable category of defendant as set forth in the guidelines—(i) that, except as provided in section 3742(g), are in effect on the date the defendant was sentenced;**

*Imprisonment.* On Count One, Mr. Hobbs is facing a maximum term of fifteen (15) years imprisonment pursuant to 18 U.S.C. §§ 933(a)(3). On Count Four, Mr. Hobbs is facing a maximum term of ten (10) years imprisonment pursuant to 18 U.S.C. §§ 922(a)(6) and 924(a)(2). On Count Five, Mr. Hobbs is facing a minimum term of five (5) years imprisonment and a maximum term of forty (40) years imprisonment pursuant to 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii) and 846. Based on the total offense level of thirty-three (33) and a criminal history category of I, the guideline imprisonment sentence is 135 months to 168 months.

*Supervised Release.* As to Counts One and Four, the guideline range for a term of supervised release is not more than three (3) years. USSG §5D1.2(a)(2). As to Count Five, the guideline range for a term of supervised release is at least 4 years. *See*, USSG § 5D1.2(a)(1).

*Probation.* As to Counts One and Four, Mr. Hobbs is not eligible for probation because he will be sentenced at the same time to a term of imprisonment for the same or a different offense. 18 U.S.C. § 3561(a)(3). As to Count Five, Mr. Hobbs is not eligible for probation because it is expressly precluded by statute. *See,* 21 U.S.C. § 841(b)(1)(B)(ii).

*Fines.* As to Counts One and Four, the maximum fine is two hundred and fifty thousand dollars ($250,000.00) per count. *See,* 18 U.S.C. § 3571(b). As to Count Five, the maximum fine is five million dollars ($5,000,000.00). As to Counts One, Four, and Five,

a special assessment fee of one-hundred dollars ($100.00) is mandatory pursuant to 18 U.S.C.A. § 3013.

> ***Restitution***.  Restitution is not applicable in this case.

- **18 U.S.C.A. §3553(6):** THE NEED TO AVOID UNWARRANTED SENTENCE DISPARITIES **among defendants with similar records who have been found guilty of similar conduct;**

In order to avoid unwarranted sentencing disparities, this Court is required to "consider other similarly situated defendants – criminal defendants in other cases who were convicted of similar crimes." *United States v. McQueen*, 727 F.3d 1144, 1160 (11th Cir. 2013) (*citing United States v. Pugh*, 515 F.3d 1179, 1195 (11th Cir. 2008). In determining the appropriate sentence in Mr. Hobbs' case, this Court should give special consideration to similarly situated defendants.

Unlike his co-conspirators, Alton Wayne Cope III and Jayden Lance Cope, Mr. Hobbs was not a convicted felon in possession of firearms, did not possess stolen firearms, and did not re-offend while on pre-trial release. Alton Cope III, a previously convicted felon, was sentenced to 51 months. Jayden Cope, who re-offended and possessed firearms while on pre-trial release, was sentenced to 72 months.

It should be noted that Mr. Hobbs was not a convicted felon during his possession of firearms, did not possess stolen firearms, and did not re-offend while on pre-trial release. These facts separate him in a positive manner from his above-mentioned co-conspirators and should serve as mitigation.

A sentence of sixty (60) months in this case would avoid unwarranted disparities while still constituting a substantial sentence. Mr. Hobbs entered this case with Criminal History

Category I and accepted responsibility at an early stage by pleading guilty. He did not proceed to trial, obstruct justice, threaten witnesses, or engage in violence during the offense conduct. In fact, he met with the government on multiple occasions in efforts to assist in any way possible.

At this time, the Government's benefit of that information has yet to be determined. Nevertheless, the Defense anticipates that the Government will submit a Motion for Downward Departure of Mr. Hobbs' sentencing guidelines based upon Substantial Assistance pursuant to the provisions of Section 5K1.1 of the United States Sentencing Guidelines.

While through his plea Mr. Hobbs has acknowledged that he made gravely poor decisions fed by addiction, by committing the acts to which he has plead guilty, the Court must acknowledge the weight of his good deeds and character which persisted before and after the offense conduct, to properly and fairly "[weigh] the good with the bad." *United States v. Adelson*, 441 F. Supp.2d 506, 513-14 (SDNY 2006).

Courts routinely impose substantial downward variances in firearms and narcotics cases where defendants present compelling mitigation, addiction issues, minimal criminal history, and evidence of rehabilitation. *See*, *Gall v. United States*, 552 U.S. 38, 59-60 (2007) (affirming probationary sentence despite guideline range of 30-37 months based on individualized mitigation); *United States v. Clay*, 483 F.3d 739, 744-45 (2007) (affirming variance where district court determined lower sentence adequately served § 3553(a)); and *United States v. Hunt*, 526 F.3d 739, 746 (2008) (district courts retain discretion to weigh mitigating factors differently than the Guidelines).

While alcohol and drug abuse addiction were traditionally improper considerations for a downward departure under the mandatory Guideline regime, it is no longer considered so under the advisory Guideline regime. *See, e.g., United States v. Garcia*, 497 F.3d 964, 971-72 (9th Cir. 2007) (remanding for reconsideration where court stated it could not consider defendant's addiction to drugs); *United States v. Cani*, 545 F. Supp. 2d 1235, 1243, 2008 U.S. Dist. LEXIS 11087 (M.D. Fla. 2008) ("there is no prohibition against factoring drug addiction into the § 3553 calculus. In fact, § 3553(a)(1) compels a sentencing court to take into account the history and characteristics of the defendant… For this reason, it is entirely appropriate to consider a defendant's drug addiction in fashioning an appropriate sentence."). Indeed, the Eighth Circuit affirmed a district court's decision to vary downward in a drug trafficking case from a Guideline range of 60 months to a sentence of probation, in part because of evidence that the defendant's "addiction to pain medication contributed to the criminal activity alleged in the indictment." *United States v. McFarlin*, 535 F.3d 808, 811 (8th Cir. 2008).

Moreover, a sixty (60) month sentence would represent a substantial term of incarceration for a defendant with no significant criminal history. Such a sentence appropriately balances punishment, deterrence, rehabilitation, and proportionality while avoiding an unnecessarily harsh sentence that exceeds what is needed to satisfy the goals of § 3553(a). In short, the totality of the circumstances in this case offers sufficient justification for this Court to sentence Mr. Hobbs to the five-year minimum mandatory term of imprisonment, with any special conditions the Court finds necessary.

## CONCLUSION

Mr. Hobbs respectfully requests this Honorable Court to enter an order sentencing him to the 60 month/five-year minimum mandatory term of imprisonment, participation in the RDAP program, followed by a period of supervised release, to include any special conditions the Court deems necessary. It is further requested that Mr. Hobbs be recommended to serve his sentence at FCI Miami or in the alternative FCI Coleman in order to remain close to family and to have access to RDAP and other rehabilitative and vocational programs.

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following: Elisabeth Adams, Esquire, Assistant United States Attorney, United States Attorney's Office, 300 N. Hogan St., Suite 700, Jacksonville, FL 32202.

Respectfully submitted,
**TASSONE, DREICER, & HILL**

/s/ James P. Hill, Esq.
JAMES P. HILL, ESQUIRE
Florida Bar No.: 0073828
1833 Atlantic Boulevard
Jacksonville, Florida 32207
P: 904.396.3344
Email: james@tassonelaw.com
Attorney for Defendant

25